Trent M. Gardner
Katherine B. DeLong
**GOETZ, GEDDES & GARDNER, P.C.**
35 North Grand Ave.
P.O. Box 6580
Bozeman, MT 59771-6580
Ph:   406-587-0618
Fax:  406-587-5144
Email: tgardner@goetzlawfirm.com
       kdelong@goetzlawfirm.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA, BUTTE DIVISION

| | |
|---|---|
| JARED LLOYD and JARED LLOYD PHOTOGRAPHY, LLC,<br><br>  Plaintiffs,<br><br>v.<br><br>JOURNAL OF WILDLIFE PHOTOGRAPHY, LLC, and JAYMOE, LLC,<br><br>  Defendants. | Cause No. CV-24-07-BU-BMM-JTJ<br><br>**VERIFIED COMPLAINT AND JURY DEMAND** |

Comes now Jared Lloyd and Jared Lloyd Photography, LLC, by and through their attorneys Trent M. Gardner and Katherine B. DeLong of Goetz, Geddes & Gardner, P.C., and for their cause of action against Defendants Journal of Wildlife Photography, LLC, and JayMoe, LLC, states and alleges as follows:

## PARTIES

1.     Plaintiff Jared Lloyd Photography, LLC ("LLC" or "Lloyd's LLC") is a limited liability company organized under the laws of Wyoming with its principal place of business in Bozeman, Montana.

2.     Plaintiff Jared Lloyd ("Lloyd") is the sole member of Lloyd's LLC and currently resides in Wasilla, Alaska, where he has lived since June 2023. Prior to that time, Lloyd resided in Bozeman, Montana for at least a decade and intends to return to Montana by the end of the year.

3.     Defendant Journal of Wildlife Photography, LLC ("Journal") is a limited liability company organized under the laws of Montana, with a mailing address of 141 Hawkins Place, PMB 222, Boonton, New Jersey 07005.

4.     The Journal's sole member is JayMoe, LLC ("JayMoe"), a New Jersey limited liability company.

5.     Upon information and belief, JayMoe has only two members:

   a. Kevin Monell, who is a citizen of New Jersey with an address of 23 Birchwood Ln., Boonton, NJ 07005; and

   b. Jason Caruso, a citizen of South Carolina with an address of 8092 Fort Hill Way, Myrtle Beach, SC 29579.

6.     Therefore, the Journal and JayMoe are citizens of New Jersey and

2

South Carolina.

## JURISDICTION AND VENUE

7. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000, and there is complete diversity between the parties.

8. Venue in this District is proper pursuant to 28 U.S.C. § 1391(2) as a substantial part of the events giving rise to Lloyd and his LLC's claims occurred in this District.

9. Venue in this Division is proper under Local Rule 3.2(b), as the Butte Division embraces Gallatin County—a county of proper venue for this action under § 25-2-118, MCA.

10. Additionally, JayMoe previously sued Lloyd and his LLC in this District. *See JayMoe, LLC v. Jared Lloyd Photography, LLC, et al.*, 2:22-cv-000066-bmm ("2022 Case"). The parties then settled the 2022 case, resulting in a binding settlement agreement (and incorporated promissory note) containing an exclusive forum selection clause in Montana. JayMoe/Journal have now breached that agreement, making venue exclusively proper in this Court.

## GENERAL ALLEGATIONS

11. Plaintiff Jared Lloyd is an award-winning professional nature

photographer and filmmaker, author, and teacher of wildlife photography with over twenty years of experience.

12. Plaintiff Lloyd's photographs and videos are published by some of the world's leading publications including National Geographic, New York Times, Audubon Magazine, and the British Broadcasting Company (BBC), among many others.

13. Plaintiff Lloyd generally owns the copyright in the media he creates, including his photos, videos and writings.

14. Nearly a decade ago, Plaintiff Lloyd conceived of and began building a subscription-based web publication through which he published many of his photos, videos and writings and imparted his knowledge to amateur and professional wildlife photographers and filmmakers alike. To this end, in 2017, Lloyd started The Photographers Journal, which he renamed to The Journal of Wildlife Photography.

15. In 2019, Lloyd entered into an agreement with Jason Caruso and Kevin Monell—New Jersey based businessmen and purported marketing experts operating under their corporate identity, JayMoe, LLC—for the purpose of scaling the Journal and reaching greater numbers of paying subscribers.

16. On or around January 15, 2020, Lloyd, Caruso and Monell officially

formed the Journal of Wildlife Photography, LLC ("Journal"), by organizing a Montana limited liability company through their respective companies. Lloyd's LLC owned 50% of the Journal, and JayMoe, LLC—Monell and Caruso's company—owned the other 50% of the Journal.

17. From 2020 through 2022, Lloyd's LLC and JayMoe collectively ran the Journal, which continued to showcase Lloyd's photos, videos, and writings (his intellectual property or "IP"). Over this time, however, their business relationship soured and disputes arose between them.

18. These disputes led to litigation in the 2022 Case.

19. To avoid further litigation, the parties began extensive settlement negotiations. This entailed negotiating Lloyd/LLC's extrication and buyout from the Journal and carefully crafting a media license permitting the Journal's ongoing use of a finite and distinct selection of Lloyd's IP following his buyout from the Journal.

20. Due to the deteriorated nature of the parties' business relationship and the complexity of the matter, it took several weeks of emails, phone calls, and drafts for the parties to agree on material terms of a global settlement between JayMoe, the Journal, and Lloyd/LLC.

21. The primary instrument of this binding global settlement agreement

was titled the "Membership Interest Purchase Agreement and Release" ("MIPA"), effective December 13, 2022. A true and accurate copy of the entire MIPA with all exhibits is attached hereto as Exhibit 1.

22. The MIPA included a Promissory Note ("Promissory Note", attached as Exhibit A to MIPA) to guarantee Lloyd/LLC's buyout from the Journal.

23. The MIPA also included a detailed Media Licensing Agreement ("Media License", attached as Exhibit D to MIPA) governing the Journal's limited ongoing use of Lloyd's IP following his buyout. The MIPA specified that if the Journal "fails to make any payment when due" under the MIPA and failed to cure, the Media License automatically terminates. Ex. 1, § 3.4.

24. The Journal's buyout of Lloyd/LLC's membership interest in the Journal pursuant to the MIPA included an agreement to pay Lloyd/LLC in order to continue using Lloyd's valuable IP in operating and publishing the Journal.

25. As provided in the MIPA, this settlement agreement was entered into to "resolve all disputes between the parties", including "the litigation", pursuant to its terms. *See* Ex. 1, p. 1.

26. According to the MIPA's explicit terms and as prescribed by law, the MIPA nullified any former agreements between the parties. *See* Ex. 1, § 7.10. This

nullification included negating any and all duties owing and agreements between the parties under the Journal's Operating Agreement, any purported partnership agreement between Lloyd's LLC and JayMoe, as well as pursuant to law.

27. The MIPA is the sole and exclusive agreement between the parties and has superseded any prior written agreement between them.

28. Upon its execution, the parties began performing under the MIPA.

29. Pursuant to the MIPA, the parties agreed that the Journal owed Lloyd's LLC $310,000 as the "Purchase Price" for its membership interest in the Journal. Ex. 1, §§ 2.1, 2.3. On December 22, 2022, the parties completed the closing on the buyout, and the Journal paid Lloyd's LLC $100,000 as part of the consideration owed for the Journal's purchase of Lloyd's LLC's membership interest in the Journal. *See id.*, §§ 2.2, 2.3.

30. Per the MIPA, the remaining Purchase Price funds of $210,000 are owed pursuant to the Journal's Promissory Note (Exhibit A to the MIPA), which is payable in $5,000 monthly installments over 42 consecutive months. JayMoe "absolutely and unconditionally" guaranteed the Promissory Note. *See id.*

31. Pursuant to the Promissory Note, the Journal made its first monthly $5,000 payment to Lloyd's LLC in March 2023. The Journal made a total of eight (8) consecutive monthly $5,000 payments to Lloyd's LLC in 2023.

32. On October 31, 2023, JayMoe and the Journal made a meritless claim of breach of the MIPA against Lloyd/LLC. *See* DeCaro-Gardner letter attached as Exhibit 2.

33. JayMoe/Journal demanded that Lloyd/LLC cure the alleged breach within 10 days and threatened to divert future payments of the agreed $5,000 monthly fee from Lloyd's LLC to an escrow account if its demand was not met.

34. The MIPA provides no provision for paying the Promissory Note's monthly payments into escrow under any circumstances, including upon an allegation of material breach. *See* Ex. 1.

35. Lloyd/LLC countered Journal/JayMoe's meritless breach accusation with a comprehensive rebuttal in a November 10, 2023 letter. *See* Exhibit 3.

36. Despite their awareness of the deficiency of their frivolous breach claim, Journal/JayMoe failed to make a $5,000 payment to Lloyd's LLC for both November and December 2023.

37. JayMoe/Journal are belatedly and in bad faith alleging a material breach as a pretext for escaping their contractual obligation under the MIPA to pay Lloyd/LLC the balance of funds owed for the Journal's purchase of LLC's shares and for the Media License.

38. Pursuant to § 2.2 of the MIPA and § 5(b)(i) of the Promissory Note,

the Journal's $5,000 monthly payment is due no later than the 13th of each month, with a ten (10) day grace period. Ex. 1.

39. The ten (10) day grace periods for the Journal's monthly payments owed for November and December 2023 have expired.

40. Given the foregoing failures, the Journal/JayMoe are in default of the MIPA and Promissory Note. Under the Promissory Note, an "'Event of Default' shall mean…(i) the failure of the Maker to make any payment required by this Note, or the Purchase Agreement, …which failure continues for a period of Ten (10) days[.]". Ex. 1 at Ex. A, § 5(b).

41. On December 29, 2023, Lloyd/LLC formally notified the Journal/JayMoe of its ongoing material breach and sent a letter entitled "NOTICE OF DEFAULT, ACCELERATION AND DEMAND FOR PAYMENT." Therein, Lloyd/LLC informed that in light of their default and the Promissory Note's acceleration clause, the Note's "**remaining principal balance of $170,000 plus accrued interest is <u>now immediately due and payable</u>**." *See* DeLong-DeCaro letter attached as Exhibit 4 (emphasis in original). Lloyd/LLC further notified the Journal that the Media License "shall automatically terminate" if the Journal failed to cure its default by tendering full payment within fifteen (15) days.

42. To date, the Journal/JayMoe have failed to make this accelerated

9

payment owed by Lloyd's LLC and have failed to cure their default. As such, Lloyd's Media License to the Journal is terminated.

43. Upon information and belief, Journal/JayMoe are consciously breaching the MIPA in bad faith to try and gain a tactical advantage as defendants in other litigation pending in the United States District Court for the District of New Jersey entitled *Going Pro: The Business of Wildlife Photography LLC v. Monell et al.*, No. 23-00781-EP-AME (the "NJ case").

44. Lloyd/LLC was not initially party to the NJ case, however, on or about July 21, 2023, Journal/JayMoe, acting as third-party plaintiffs, baselessly added Lloyd/LLC as defendants in that matter.

45. On or about September 29, 2023, Lloyd/LLC first moved to dismiss JayMoe's frivolous third-party complaint against him in the NJ case. Lloyd/LLC's request for dismissal is premised, in large part, on the conclusion that the MIPA released them from all third-party claims brought against them in the NJ case. Lloyd/LLC further contend a lack of personal jurisdiction in New Jersey, improper venue, and a lack of standing.

46. JayMoe/Journal's sudden and frivolous claim that Lloyd/LLC breached the MIPA is a thinly veiled effort to bolster their defenses and advance their third-party claims in the NJ case and was strategically asserted only after

Lloyd/LLC first moved to dismiss the third-party claims in the NJ case.

47. Since its execution on December 13, 2022, Lloyd/LLC have complied with all material terms of the MIPA, despite Journal/JayMoe's October 31, 2023 claim to the contrary.

## COUNT I – BREACH OF CONTRACT

48. Lloyd/LLC incorporates the above allegations as if fully restated herein.

49. In executing the MIPA and incorporated exhibits, Lloyd/LLC and the Journal/JayMoe entered into valid, binding and enforceable contractual settlement agreements. Pursuant to the MIPA, the Journal/JayMoe agreed and is required to make $5,000 monthly payments to Lloyd/LLC by no later than the 13th of each month.

50. The Journal/JayMoe have refused to make the requisite monthly payments owed to Lloyd/LLC.

51. Despite notice provided, the Journal/JayMoe have failed to cure their default by tendering the accelerated amount now due and owing of $170,000 plus interest to Lloyd/LLC. To date, no amount of the accelerated amount has been paid to Lloyd/LLC.

52. The Journal/JayMoe are in material breach of the MIPA and have

defaulted under the Promissory Note, and accordingly, Lloyd/LLC have incurred damages.

53. Lloyd/LLC are entitled to an order of this Court enforcing the MIPA and all of its exhibits, including the Promissory Note, and awarding Lloyd/LLC their damages in the full accelerated amount of $170,000 plus accrued interest, along with any other damages owed under the MIPA.

54. Lloyd/LLC have also incurred attorney's fees and costs in connection with the Journal/JayMoe's breach and are also entitled to an award of attorney's fees and costs incurred, as expressly provided under § 7.2 of the MIPA. *See* Ex. 1.

## COUNT II – BREACH OF THE IMPLIED COVENANT

55. Lloyd/LLC incorporates the above allegations as if fully restated herein.

56. The Journal/JayMoe have materially breached the terms of their contractual settlement agreements with Lloyd/LLC by refusing to pay Lloyd/LLC the $5,000 monthly payments owed under the MIPA and Promissory Note since November 2023, and failing to cure their default by tendering the full accelerated payment now owed of $170,000, plus interest. The Journal/JayMoe have failed to act honestly, fairly, and in good faith in carrying out the terms of their agreement with Lloyd/LLC.

57. As a result of the Journal/JayMoe's actions and inactions, Lloyd/LLC have been damaged. Lloyd/LLC are entitled to an order of this Court enforcing the MIPA and all of its exhibits, including the Promissory Note, and awarding Lloyd/LLC their damages in the full accelerated amount owed of $170,000 plus accrued interest, their attorney's fees and costs, and any other damages owed under the MIPA.

## COUNT III – DECLARATORY JUDGMENT

58. Lloyd/LLC incorporates the above allegations as if fully restated herein.

59. Pursuant to the Montana Declaratory Judgments Act, §§ 27-8-101 *et seq.*, Mont. Code Ann., this Court has the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." § 27-8-201, Mont. Code Ann.

60. There is a current dispute as to the status of the MIPA and the Media License, and whether Lloyd/LLC are entitled to the full accelerated amount owed of $170,000 plus accrued interest and whether the Media License is terminated due to the Journal's breach. Specifically, the Journal/JayMoe maintain it is not required to pay the amounts owed under the MIPA directly to Lloyd/LLC as a result of Lloyd/LLC's alleged material breach of the MIPA, an allegation Journal/JayMoe

13

know is wholly without merit.

61. This Court should declare that Lloyd/LLC are not in breach of the MIPA and that the MIPA is an enforceable, binding global settlement agreement. The Court should declare that Journal/JayMoe are in breach of the MIPA, that Lloyd/LLC are owed contractual damages, and that the Media License is terminated, no later than January 16, 2024, due to the Journal's breach.

62. This Court should also award Lloyd/LLC his costs pursuant to § 27-8-311, Mont. Code Ann., and attorney fees incurred as supplemental relief pursuant to § 27-8-313, Mont. Code Ann.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Jared Lloyd and Jared Lloyd Photography, LLC request the following orders of the Court:

1. That judgment be entered in Plaintiffs Lloyd/LLC's favor that the Journal/JayMoe breached the MIPA between them;

2. An award of compensatory damages against the Journal and JayMoe, jointly and severally, in the amount of $170,000 plus accrued interest;

3. A declaration of the Court that the Media License is terminated no later than January 16, 2024;

4. An order awarding attorney's fees and costs incurred in this matter as

provided by the express terms of the MIPA and as otherwise may be provided by law; and

5. For such other relief as this Court deems equitable and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all claims so triable.

DATED this 16th day of January, 2024.

        **GOETZ, GEDDES & GARDNER, P.C.**

        _/s/ Katherine B. DeLong_
        Trent M. Gardner
        Katherine B. DeLong

        Attorneys for Plaintiffs

## VERIFICATION

I, Jared Lloyd, declare under penalty of perjury that the following is true and correct:

1. I have read the foregoing *Verified Complaint and Jury Demand*; and

2. Other than the allegations set forth upon information and belief, the facts set forth above in this *Verified Complaint and Jury Demand* are based upon my personal knowledge and are true to the best of my knowledge, information, and belief.

DATED this 16 day of January, 2024.

*Jared Lloyd*
_____
**Jared Lloyd**,
individually and on behalf of Jared Lloyd Photography, LLC